10210

NETTLES v. CANTWELL *ET AL.*, BOARD OF COMMISSIONERS.

(99 S. E. 765.)

1. COUNTIES—BOND ISSUE—CONSTITUTIONALITY OF STATUTE.—Act February 26, 1917 (30 St. at Large, p. 542), providing for road and bridge improvement bond issue by Charleston county, does not violate Const., art. X, sec. 5, limiting indebtedness of territory of State which is covered by more than one subdivision of State to 15 per cent. of assessed valuation of accessable property, though bonded debt of city of Charleston exceeds 15 per cent. of its taxable property.

2. COUNTIES—BOND ISSUE—CONSTITUTIONALITY OF STATUE.—Act February 26, 1917 (30 St. at Large, p. 542), providing for bond issue to "construct or purchase bridges," is not obnoxious to Const., art. X, sec. 6, limiting county's power to issue bonds to the building and repairing of roads, buildings, and bridges.

3. TAXATION — CONSTITUTIONALITY — UNIFORMITY. — Act February 26, 1917 (30 St. at Large, p. 542), providing for roads and bridge

improvement bond issue by Charleston county, and requiring in section 6, that the townships requesting road or bridge preference pay one-third of cost thereof, is not, in imposing such additional burden, violative of Const., art. X, sec. 1, providing for uniform taxation, the county and townships being separate entitles in view of art. 7, sec. 11, and the tax being imposed on county and not townships, and, even if it had been imposed on townships, uniformity in the particular township would have satisfied Constitution.

4. COUNTIES—VALIDITY OF BOND ISSUE—DISCRETION OF SANITARY AND DRAINAGE COMMISSION.—Discretion given sanitary and drainage commission to give township road and bridge improvements, without requiring contribution from it, where it has not applied for improvement, under act February 26, 1917 (30 St. at Large, pp. 543,544), secs. 5, 6, providing for such improvements in Charleston county to be decided upon by such commission, with the right given it to give township preference upon its application therefor and payment of one-third of cost, will not affect validity of the bond issue.

5. COUNTIES—SANITARY AND DRAINAGE COMMISSION—ARBITRARY EXERCISE OF DISCRETION.—Should sanitary and drainage commission, given discretion in deciding upon road and bridge improvements in Charleston county, under act February 26, 1917 (30 St. at Large, p. 542), exercise discretion arbitrarily, taxpayer will be given relief.

Before DeVORE, J., Charleston, Spring term, 1919. Affirmed.

Action by J. K. Nettles against W. P. Cantwell and others, Board of County Commissioners of Charleston county. From an order refusing to enjoin defendants from issuing bonds, plaintiff apeals. Appeal dismissed.

Following is the agreed statement of facts referred to in opinion:

It is agreed that the following facts shall constitute the agreed statement of facts for the hearing of the petition and answer in this cause:

The plaintiff, J. K. Nettles, is a taxpayer in the city and county of Charleston, and the defendants constitute the board of county commissioners of Charleston county.

An act of the legislature of South Carolina, as per copy attached to the complaint, was duly passed and approved February 26, 1917 (30 St. at Large, p. 542), and an election

thereunder held on the 10th day of October, 1917, at which election the majority voted in favor of the issuance of said bonds.

By an act of the legislature, approved the 12th day of February, 1918 (30 St. at Large, p. 1037), the election so held was declared valid in all respects, together with the bond issue in pursuance of said election, and the said bonds were thereby declared valid in all respects and valid obligations of the county of Charleston and incontestable in the hands of *bona fide* purchasers for value.

The city of Charleston is a political subdivision of Charleston county.

The assessed taxable value of property in Charleston county, according to auditor's books for 1917, was $29,215,-450. The indebtedness of Charleston county, exclusive of the city of Charleston, was $26,000, as follows:

Bonds, school district No. 1, Santee, $10,000; Edisto Island Bridge bonds, $13,000; James Island Bridge bonds, $3,000; total, $26,000.

The assessed taxable value of property in the city of Charleston, according to assessors' books, 1917, was $22,-316,315.

The indebtedness of the city of Charleston was the sum of $5,618,000, as follows: 4% refund bonds, $3,350,000; 4½% refund bonds, $100,000; 5% refund bonds, $313,500; 5% stock, $23,000; sewerage bonds, $331,500; waterworks bonds, $1,500,000; total, $5,618,000.

In addition to above indebtedness, Charleston school district, which is comprised within the present limits of the city of Charleston, is authorized by act of legislature to issue $250,000 of bonds. Under amendment to Constitution, article X, section 5, approved January 30, 1917, the limitations imposed by that section do not apply to this district.

Of the above indebtedness, $3,786,500 was outstanding at the time of the adoption of the Constitution of 1895, and

largely exceeded and still exceeds 15 per cent. of the assessed taxable value of property in the city of Charleston.

The sewerage and waterworks bonds are exempt from the limitations of article X, section 5, of the Constitution.

The assessed valuation of property in Charleston county in 1918 was $32,008,261, and in the city of Charleston in 1918 was $23,700,137.

The proceeds of the Charleston county bonds will be used by the sanitary and drainage commission of Charleston county in the construction of highways in certain townships in the county of Charleston without any contribution whatsoever from any of the said townships within which the proceeds of said bonds are to be employed.

*Messrs. Nathans & Sinkler,* for appellants, submit: *We admit that if Verner v. Muller, 89 S. C. 545, is followed bonds can be issued by the county to buy bridges. The act under discussion is unconstitutional, in that it allows inequitable taxation:* Const. 1895, art. X, sec. 1. *The indebtedness of the city of Charleston now exceeds 15% of the value of all taxable property, and if Charleston county is permitted to issue bonds the percentage of indebtedness will be still further increased in violation of the Constitution:* Const. 1895, art. X, sec. 5.

*Mr. W. Turner Logan,* for respondent, cites: *The county has power to issue bonds to buy bridges:* 89 S. C. 545. *Act. does not violate sec. 1, art. X, Const. 1895. The city of Charleston, by exceeding constitutional limitation, could not deprive a political division covering or extending over same territory from incurring indebtedness up to its constitutional limit:* 72 S. C. 546; 104 S. C. 421; 42 S. C. 395. *The greater part of the bonded indebtedness of the city of Charleston was created before the adoption of the Constitution of 1895, and article X, sec. 5, does not apply to this:* 49 S. C. 78; 103 S. C. 10.

June 23, 1919.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an appeal from an order, refusing to enjoin the defendants from issuing bonds, under an act of the legislature approved the 26th of February, 1917, and entitled "An act to provide for a bond issue for Charleston county, not exceeding in amount $275,000, for permanent roads, and to construct or purchase bridges, and to provide for sinking fund therefor, and also for an election to determine the same." 30 St. at Large, p. 542.

The fifth and sixth sections of the act are as follows:

"Sec. 5. The said bonds shall be turned over to the said sanitary and drainage commission of Charleston county, to be disposed of for cash, at not less than par, at such times and in such amounts" as the building and repairing of public roads and bridges in said county may, in their discretion, require, "said sale to be upon such notice by advertisement and competitive bids as the said sanitary and drainage commission shall deem proper.

"Sec. 6. That whenever any township or townships in the county of Charleston applies to or petitions the said sanitary and drainage commission to purchase or construct a bridge for the betterment of such township or townships, or to construct a permanent road in such township or townships, the said commission shall have the right to use the proceeds of said bonds for such purposes: Provided, That said township or townships contribute one-third of the building or buying such bridges and constructing such roads."

The complaint alleged that the act was unconstitutional in the following particulars:

(1) "Violation of article X, section 5, in that the bonded debt over and upon the city of Charleston exceeds 15 per cent. of the value of all taxable property in such city as valued for taxes by the State, and the issue of said bonds by the county of Charleston will proportionately increase the

debt over and upon the said city, and the aggregate amount of the outstanding debt over and upon the county of Charleston and the several political divisions and municipal corporation therein exceeds 15 per cent. of the taxable property in the county of Charleston."

(2) "Violation of article X, section 6, in that act authorizes the purchasing of bridges; whereas, article X, section 6, limits power of county to issue bonds only for the purpose of building and repairing roads, buildings, and bridges."

(3) "Violation of article X, Section 1, in that the act authorizing the issue imposes upon certain townships the burden of contributing one-third of the cost of building or buying bridges and construction of roads in addition to the tax laid upon such townships for the buying or building of bridges and the construction of roads throughout the county, and secures to other townships the purchase or construction of bridges and the construction of roads within such townships, without any additional contribution whatsoever."

(4) "That as the sanitary and drainage commission of Charleston county intends to use the proceeds of said bonds in the construction of roads and construction or purchase of bridges in townships where no application has been made therefor, and without requiring any contribution from such townships, such issue will be illegal."

The case was heard by his Honor, the Circuit Judge, on an agreed statement of facts, which will be reported.

The first question that will be considered is whether there was error on the part of his Honor, the Circuit Judge, in ruling that the act was not in violation of section 5, article X, of the Constitution, which provides that the bonded debt of no county, township, municipal corporation, or political division, or subdivision of the State, shall ever exceed 8 per centum of the assessed value of all the taxable property therein as assessed for State taxation. "And, wherever there shall be several political divisions or municipal corporations, covering or extending over

the same territory, or portions thereof, possessing a power
to levy a tax or contract a debt, then each of such political
divisions or municipal corporations, shall so exercise its
power to increase its debt under the foregoing eight per
cent. limitation that the aggregate debt over and upon any
territory of this State shall never exceed fifteen per centum
of the value of all taxable property in such territory, as
valued for taxation by the State: *Provided,* That nothing
herein shall prevent the issue of bonds for the purpose of
paying or refunding any valid municipal debt heretofore
contracted in excess of eight per centum of the assessed value
of all the taxable property therein."

The cases of *Todd v. Laurens,* 48 S. C. 395, 26 S. E. 682;
*McCreight v. Camden,* 49 S. C. 78, 26 S. E. 984; *Lancaster
School District v. Robinson-Humphrey Co.,* 64 S. C. 545,
42 S. E. 998; *Seegers v. Gibbes,* 72 S. C. 532, 52 S. E. 586;
*Bethea v. Town of Dillon,* 91 S. C. 413, 74 S. E. 983; *Lillard v. Melton,* 103 S. C. 10, 87 S. E. 421; and *Beacham v.
City of Greenville,* 104 S. C. 421, 89 S. E. 401—are conclusive of this question; and the exception raising it is overruled.

The next question for consideration is whether there was
error in the ruling that the act was not obnoxious to section
6, art. X, of the Constitution, in that it authorizes the
purchasing of bridges; whereas, the word "purchase"
is not mentioned in that section of the Constitution.

The case of *Verner v. Muller,* 89 S. C. 545, 72 S. E. 393,
shows that the exception raising this question cannot be
sustained.

The third ground upon which the plaintiff contends that
the provisions of section 6 of the act are repugnant to section 1, article X, of the Constitution, was also overruled by his Honor, the Circuit Judge, and the next
question to be determined is whether his ruling was
erroneous.

That section provides that "The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation."

Section 11, art. VII, of the Constitution, contains the provision that "Each of the several townships of this State * * * shall constitute a body politic and corporate."

Section 5, art. X, of the Constitution, provides that "The corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property, within the jurisdiction of the body imposing the same."

It will thus be seen that the county of Charleston and the townships therein are separate and distinct entities—no one of them being liable for the debts of the other. The only tax imposed by the act in question is upon Charleston county, and not upon the townships therein.

If section 6 had not been inserted in the act, no question could have arisen as to its constitutionality, on the ground that the tax was not uniform in Charleston county. The act does not impose a tax upon those townships in Charleston county, petitioning for the preference or privilege mentioned in section 6 of the act, upon the conditions therein stated. But even if a tax had been imposed upon the townships for said purpose, it would not have contravened the provisions of the Constitution as to uniformity, for the reason that there is a compliance with the requirements of the Constitution, in this respect, whenever the tax is uniform in the particular subdivision of the State upon which it is imposed.

The last exception is as follows: "That his Honor erred in not holding that, as the defendants have admitted that part of the proceeds of said bonds are to be used in the construction of roads and construction or purchase 4, 5 of bridges in townships, where no application has been made therefor, and without requiring any contributions from such townships, such use would be illegal,

and for that reason the said issue of bonds is enjoined."

No constitutional question is raised by this exception, but only the right of the sanitary and drainage commission to exercise its discretion, in the selection of the townships, within which the work shall be completed first.   If it should be made to appear hereafter that the commission was arbitrarily exercising its discretion, so as to be prejudicial to any of the taxpayers of Charleston county, such taxpayers would be entitled to relief.   But the exercise of this discretion does not, in any respect, involve the constitutionality of the bonds, which must be placed in the hands of the commission before its discretion can be exercised.   Nor is there any necessary conflict between the provisions of section 6 of the act and the exercise of the discretion conferred by section 5 on the commissions, as to where the work should first be completed.

Appeal dismissed.